UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

JOSE SERRANO ORTERO, et al.,

                                                             No. 12 Civ. 4536 (LTS)(HBP)

                    Plaintiffs,                 No.  05 MD 01688 (LTS)

         -against-

PFIZER, INC., et al.,

                    Defendants.

-------------------------------------------------------x

## OPINION AND ORDER

APPEARANCES:

| | |
|---|---|
| SQUITIERI & FEARON, LLP | SIMPSON THACHER & BARTLETT LLP |
| By: Lee Squitieri, Esq. | By: Lynn K. Neuner, Esq. |
|    Caitlin Duffy, Esq. |    George S. Wang, Esq. |
|    Garry T. Stevens, Jr., Esq. |    Bryce A. Pashler., Esq. |
| 32 East 57th Street, 12th Fl. | 425 Lexington Avenue |
| New York, NY 10022 | New York, NY 10017 |
| *Attorneys for Plaintiffs* | DLA PIPER LLP |
| | By: John R. Wellschlager, Esq. (*pro hac vice*) |
| | 6225 Smith Avenue |
| | Baltimore, MD 21209 |
| |       - and- |
| |    Michael D. Hynes, Esq. |
| |    Rachel V. Stevens, Esq. |
| | 1251 Avenue of the Americas |
| | New York, NY 10020 |
| | *Attorneys for Defendants* |

LAURA TAYLOR SWAIN, United States District Judge

Lead Plaintiffs, who are three former employees of Pfizer Inc. ("Pfizer"), bring this putative class action against Pfizer, two related corporate entities, and certain Pfizer ERISA plan committees, committee members, and directors (collectively, "Defendants"), pursuant to §§ 502(a)(2) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(a)(2), asserting claims for violations of fiduciary duties.  Plaintiffs' claims arise from their participation in ERISA-governed retirement savings plans sponsored by Pfizer (the "Puerto Rico Plans" or "Plans"), which permitted employees to invest their plan contributions in a variety of investment funds, including company stock funds that invested exclusively in Pfizer common stock.  Plaintiffs allege that Defendants either knew or should have known that Pfizer was engaging in marketing and communications activities concerning two drugs, Celebrex and Bextra, that artificially inflated the value of Pfizer securities and rendered them imprudent and inappropriate investments, and that Pfizer's stock price fell after certain revelations regarding these two drugs.  Plaintiffs assert that Defendants are liable to the Puerto Rico Plans under ERISA for losses suffered by the Plans on their holdings of Pfizer stock.  The Court has jurisdiction of Plaintiffs' claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e).

Defendants have moved to dismiss Plaintiffs' Second Amended Complaint ("SAC").  Additionally, Pfizer, Pfizer Pharmaceuticals LLC, and Pfizer Corporation (collectively, the "Entity Defendants") have separately moved to dismiss Plaintiffs' claims as to them, on the ground that they were not fiduciaries of the Plans involved in this case.  The Court has reviewed carefully all of the parties' submissions and, for the following reasons, Defendants' motion to dismiss the SAC is granted.  The Entity Defendants' separate motion to dismiss will be terminated as moot.

BACKGROUND

This case is related to In re Pfizer ERISA, 04 cv 10071 (the "Main ERISA Action"). The Court dismissed the Complaint in the Main ERISA Action, which asserted claims similar to those here, by Opinion and Order dated March 29, 2013. Familiarity with the motion practice in the Main ERISA Action, which largely overlaps with the instant motion practice, is presumed. The following facts are drawn from the SAC, and are taken as true for purposes of this motion to dismiss.[1]

The Parties

Plaintiffs are current or former participants in defined contribution plans sponsored by Pfizer or Warner-Lambert. The three named plaintiffs, Jose Serrano Ortero, Edwin Valentin Arroyo, and Francisco J. Rodriguez Torres, were participants in the Plans. (SAC ¶¶ 20-22). The SAC proposes two classes. The "Over-Concentration Class" consists of all persons, other than the Defendants, who were participants in, or beneficiaries of, any of the relevant plans at any time between August 29, 2000, and the present (the "Over-Concentration Class Period") and whose accounts held more than 30% of their assets in Pfizer securities or common stock funds. (SAC ¶ 13.) The "Prudence Class" consists of all persons, other than the Defendants, who were participants in, or beneficiaries of, any of the relevant plans at any time between August 29, 2000, and December 9, 2005 (the "Prudence Class Period"), and whose accounts included investments in

---

[1] In deciding a motion to dismiss, the Court may also consider statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the Securities and Exchange Commission, analyst reports, and documents upon which Plaintiffs relied in bringing suit. See City of Livonia Employees' Retirement System v. Wyeth, No. 07 Civ. 10329(RJS), 2010 WL 3910265 (S.D.N.Y. Sep. 29, 2010), at *1 n. 1.

Pfizer stock.[2]  (SAC ¶ 14.)

The SAC identifies and refers to four general groupings of Defendants. The first group is the Entity Defendants, comprised of Pfizer, Pfizer Pharmaceuticals, LLC, and Pfizer Corporation. (SAC ¶¶ 23-25.) The second group, the Officer and Director Defendants, is comprised of sixteen individuals who were high-ranking corporate officers of Pfizer during the Class Period, and whose compensation was tied directly to Pfizer's performance. (SAC ¶¶ 27-28.) The third group, the Pfizer Compensation Committee Defendants, consists of the Compensation Committee of Pfizer's Board of Directors and its members. (SAC ¶ 16.) While the precise role of the Compensation Committee is unclear, the SAC alleges that the Compensation Committee Defendants administered the Plans and had decision-making authority for Pfizer and each of its subsidiaries and Plans, including the power to appoint, remove, and monitor other Plan fiduciaries. (SAC ¶¶ 29-30.) The fourth and final group, the Pfizer Committee Defendants, consists of the various administrative committees that managed the Plans, as well as the individual members of those committees. (SAC ¶¶ 18, 34-37.)

The Plans

There are three ERISA plans at issue in this litigation: the Pfizer Savings and Investment Plan for Employees Resident in Puerto Rico ("PSIP"); the Pfizer Savings Plan for Employees Resident in Puerto Rico ("PSP"); and the Warner-Lambert Savings and Stock Plan for Colleagues in Puerto Rico ("W-L Plan"). (SAC ¶ 1.) The Plans were in effect at different points during the Class Period and were ultimately merged into a single plan -- the PSP – on April 1,

---

[2]  Throughout this Opinion, the term "Class Period" will refer collectively to both the Over-Concentration Class Period and the Prudence Class Period.

2003.  (SAC ¶ 53.)[3]

While they are subject to ERISA, the Plans are not qualified under the federal Internal Revenue Code.  (SAC ¶ 39.)  Instead, the Plans are subject to the Puerto Rico General Revenue Code.  (SAC ¶ 40.)   The Plans did not purport to be Employee Stock Ownership Plans ("ESOPs") and did not purport to invest primarily in employer securities.  (SAC ¶¶ 44, 55, 66.)  The PSIP and W-L Plans did not purport to be ERISA § 404(c) Plans.[4]  (SAC ¶¶ 45, 67.)  While the PSP Plan purported to be a § 404(c) Plan, it was not § 404(c) compliant.  (SAC ¶ 56.)  Each of the Plans was established and maintained through a written instrument, and each featured investment in Pfizer securities ("Company Stock") through participant contributions, an employer matching component, or both.  (SAC ¶¶ 46-48, 57-60, 68-70.)

Allegations of Misconduct

Plaintiffs allege that Defendants were aware, during the Class Period, that investment in Company Stock was imprudent and that the price of Pfizer's stock was artificially high because two of Pfizer's drugs, Celebrex and Bextra, presented cardiovascular and gastrointestinal risks of which the market was unaware.  Plaintiffs cite a number of medical studies conducted prior to and during the Class Period that allegedly revealed significant risks posed by Celebrex and Bextra.  (SAC ¶¶ 127 - 254.)  Plaintiffs further allege that Defendants did not

---

[3] On June 19, 2000, Pfizer acquired the Warner-Lambert Company ("Warner-Lambert") and took over the W-L Plan, and on that same date all Warner-Lambert common stock held in the W-L Plan was automatically exchanged for Pfizer common stock.  (SAC ¶ 64.)  Pfizer sponsored and maintained the PSIP from the start of the Class Period in August 2000 until it merged with the W-L Plan to become the PSP on April 1, 2003.  (SAC ¶ 53.)

[4] An ERISA § 404(c) Plan is an individual account plan that 1) provides an opportunity for a participant or beneficiary to exercise control over assets in his individual account; and 2) provides a participant or beneficiary an opportunity to choose, from a broad range of investment alternatives, the manner in which some or all of the assets in his account are invested.  29 CFR § 2550.404c-1.

publicly disclose the results of many of these studies until years later and that, in some instances, Defendants deliberately concealed or presented misleading information about the data.  (See e.g., id. (describing various studies conducted on Bextra and Celebrex and alleging that Defendants failed to disclose their results).)  On December 10, 2004, the Federal Food and Drug Administration (the "FDA"), approved a new label for Bextra with a "black box" warning concerning cardiovascular risks for certain patients.[5]  (SAC ¶ 261.)  On December 17, 2004, the National Institutes of Health announced the premature suspension of a long term study involving Celebrex as the result of dramatic increases in cardiovascular death and stroke among patients taking Celebrex as part of the trial; as a result, Pfizer's stock price dropped 12%.  (SAC ¶¶ 265 - 66.)  By January 24, 2005, public calls were issued to remove Celebrex and Bextra from the market.  (SAC ¶¶ 276 -78.)  On April 7, 2005, Pfizer agreed, at the FDA's urging, to insert a black box warning in Celebrex's label and publicly announced that the FDA had directed it to remove Bextra from the market.  (SAC ¶¶ 316, 323-24.)  The Plans ultimately lost hundreds of millions of dollars as a result of investments by Defendants in Company Stock during the Class Period.  (SAC ¶ 459.)  Additionally, in connection with FBI and Department of Justice investigations, Pfizer managers pled guilty to both criminal off-label marketing and destruction of evidence relating to Bextra.  (SAC ¶ 409.)  Pfizer also paid $2.3 billion to settle civil and criminal claims involving off-label marketing of Bextra and other drugs -- $1.3 billion of which was specifically paid in relation to criminal charges for off-label promotion of Bextra.  (Id.)

Claims Asserted

---

[5] Plaintiffs assert that "the black box label is the most potent warning in the FDA's arsenal, and often has a significant negative impact on a drug's sales." (SAC ¶ 315.)

Plaintiffs assert the following claims: breach by all Defendants of the ERISA fiduciary duty to diversify plan investments (Count I), the duties of prudence and loyalty (Count II), and the duty to avoid conflicts of interest (Count VI); breach by the Entity Defendants and the Director & Officer Defendants of the duty to disclose to co-fiduciaries (Count III) and the duty to monitor (Count IV); and breach by the Entity Defendants, the Director & Officer Defendants, and the Plan Committee Defendants of the duty to provide information to plan beneficiaries (Count V). Plaintiffs also assert claims for co-fiduciary liability against all Defendants pursuant to ERISA § 405, 29 U.S.C. § 1105 (Count VII).

PROCEDURAL BACKGROUND

On March 20, 2009, this Court granted in part and denied in part a motion to dismiss the complaint in the Main ERISA Action. In that action, the Court dismissed (for lack of standing) all claims regarding plans for employees in Puerto Rico, and dismissed the "knowing participation" claims under ERISA § 502(a)(3) as to all Defendants. The Court allowed Plaintiffs' claims of breach of fiduciary duty to proceed. In 2011, the Second Circuit decided In re Citigroup ERISA Litig., 662 F.3d 128 (2d Cir. 2011), a case in which the Second Circuit, following the Third Circuit's decision in Moench v. Robertson, 62 F.3d 553 (3d Cir. 1995), held that investments of employee benefit plan funds in employer securities pursuant to plan provisions calling for such investments are presumptively prudent. The Citigroup Court further held that the presumption is to be applied at the pleading stage, such that dismissal of a fiduciary breach claim arising from investments in employer securities is appropriate unless the complaint alleges facts sufficient to demonstrate abuse of discretion by the fiduciary. 662 F.3d at 139. Since the Citigroup decision, the Second Circuit has issued five more decisions interpreting and applying the Moench

presumption in ERISA cases: <u>Gearren v. McGraw-Hill Cos.</u>, 660 F.3d 605 (2d Cir. 2011); <u>Fisher v. JP Morgan Chase & Co.</u>, 469 F. App'x 57 (2d Cir. 2012) (summary order); <u>In re GlaxoSmithKline ERISA Litig.</u>, 494 F. App'x 172 (2d Cir. 2012); <u>Slaymon v. SLM Corp.</u>, No. 10-4061-CV, 2012 WL 6684564 (2d Cir. Dec 26, 2012); and <u>Taveras v. UBS AG</u>, 708 F.3d 436 (2d Cir. 2013).  In light of these legal developments, plaintiffs in the Main ERISA Action amended their complaint and defendants in that action moved to dismiss the amended complaint.  On March 29, 2013, this Court granted defendants' motion to dismiss the Main ERISA action in its entirety, finding that the <u>Moench</u> presumption of prudence applied to the plans at issue in the Main ERISA Action, and that plaintiffs in that action had failed to allege facts sufficient to overcome that presumption (the "Main ERISA Opinion").

The instant action was commenced on January 25, 2012, and Plaintiffs filed their SAC on November 6, 2012.  Defendants, relying on <u>Citigroup</u> and its progeny, now move to dismiss the SAC.

## DISCUSSION

In deciding a motion to dismiss a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court accepts as true the non-conclusory factual allegations in the complaint and draws all reasonable inferences in the plaintiffs favor.  <u>Roth v. Jennings</u>, 489 F.3d 499, 501 (2d Cir. 2007); <u>see also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 677 (2009).  "A pleading that offers labels and conclusions or a formulaic recitation of elements of a cause of action will not do." <u>Iqbal</u>, 556 U.S. at 677 (internal citations omitted).  Rather, to survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 570 (2007).  "Where a complaint pleads facts that are merely

consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Iqbal, 556 U.S. at 677.

Duty of Prudence Claims

    The Moench Presumption

The Moench presumption, articulated by the Third Circuit in Moench v. Robertson, 62 F.3d 553 (3d Cir. 1995), holds that a presumption of prudence applies to a fiduciary's retention of investments in employer securities in certain types of employee benefit plans. Id. at 371. The Second Circuit, in Citigroup, adopted this presumption and held that the retention of such investments is subject to the deferential abuse of discretion standard. Citigroup, 662 F.3d at 140. The Citigroup Court also determined that the Moench presumption is properly applied at the pleading stage: "Where plaintiffs do not allege facts sufficient to establish that a plan fiduciary has abused his discretion, there is no reason not to grant a motion to dismiss." Id. at 139.

In assessing whether the Moench presumption applies, the Court must look first to the language of the relevant plans. If the plan documents require or, at least, "strongly favor" investment in employer securities, the presumption will apply. In re GlaxoSmithKline ERISA Litig., 494 F. App'x 172, 174 (2d Cir. 2012) (quoting Citigroup, 662 F.3d at 139-40). In Citigroup, the plan documents provided for an investment fund "'comprised of shares of' employer stock, and authorize[d] the holding of 'cash and short-term investments' only to facilitate the 'orderly purchase' of more company stock." 662 F.3d at 139. The Second Circuit applied the Moench presumption, finding that such language gave the fiduciary "little discretion to alter the composition of investments." Id. Similarly, in McGraw-Hill, the Moench presumption was applied where the relevant plan documents stated that "the Pension Investment Committee

"shall determine in its sole discretion the Investment Options that shall be available under the Plan, *provided that* . . . the Plan shall offer (a) the 'Stock Fund' which will be invested primarily in the Common Stock of the Corporation." Gearren v. McGraw-Hill Cos., 690 F. Supp. 2d 254, 262, 264 (S.D.N.Y. 2010) (emphasis in original), aff'd, 660 F.3d 605 (2d Cir. 2011). In Fisher v. JP Morgan Chase & Co., the Second Circuit found that the Moench presumption applied even when a plan did not expressly require that participants be given the opportunity to invest in employer stock, because "a number of the Plan's provisions strongly favor[ed] employee investment in JP Morgan," distinguishing the case from a situation in which the Plan's terms granted fiduciaries "unfettered discretion whether to offer" the employer's stock.[6] 469 F. App'x 57, 60 (2d Cir. 2012) (summary order).

      The fact that a plan may contain language giving fiduciaries power to eliminate the company stock fund investment option does not preclude application of the Moench presumption. See, e.g., GlaxoSmithKline, 494 F. App'x at 175; Taveras v. UBS AG, 708 F.3d at 444. In Taveras, the Second Circuit found that the Moench presumption applied to a plan that explicitly permitted the investment committee to eliminate the company stock fund as an investment option. Id. Looking to plan language providing that one of the Investment Funds "*shall* be the [UBS] Common Stock Fund," the court held that, despite the fund elimination provision, the plan sufficiently required its fiduciaries to provide plan investors the option to invest in a company stock fund so as to trigger the presumption of prudence." Id. (emphasis added).

      The Plans at issue here include fund elimination language that is similar to the

---

[6] For example, the Plan language in JP Morgan mandated that, prior to October 1, 2002, 50% of the matching contributions given by JP Morgan to participants who had not achieved certain age and service requirements would be automatically invested in the company stock fund. 469 F. App'x at 60 n. 3.

language in Taveras.  See, e.g., W-L Plan, Ex. 2 to Pashler Decl. at § 2.34 ("The Investment Committee may add or delete investment funds available under the Plan").  The Plans also include language suggesting that fiduciaries have some discretion as to how to invest the assets of any given fund.  See, e.g., PSIP, Ex. 1 at § VII.D ("Nothing provided herein shall prevent the Trustee or [the Investment Adviser] from maintaining in cash or short term securities such part of the assets of each Fund (including the Pfizer Common Stock Fund) as in its sole discretion it shall deem necessary or desirable to accomplish the purposes of this Plan").  As explained in the Main ERISA Opinion, which applied the Moench presumption to plans containing essentially identical language, such fund elimination provisions are insufficient to preclude application of the presumption or to change the test applied for abuse of discretion.  (See Main ERISA Opinion at 13 - 14.)  The Court has reviewed carefully the Plans at issue and finds that their language closely tracks the language of plans examined in prior Second Circuit cases where the Moench presumption was held to apply, and also tracks the language of the plans that were the subjects of the Main ERISA Action.  Notably, the Plans provide that a company stock fund "shall" be offered, require that employer matching contributions be made in company stock, and include numerous references to the company stock fund that would render sections of the Plans incoherent if fiduciaries had unfettered discretion to withdraw the company stock fund option.[7]  Additionally,

---

[7]   See, e.g., PSIP, Ex. 1 at § VII.A (employee contributions shall be invested in one or more of the following Funds . . . Fund C - an unsegregated fund invested and re-invested solely in Pfizer Inc common stock"); id. at § VII.B (all employer contributions "shall be invested in a separate unsegregated fund consisting solely of Pfizer Inc common stock"); id. at § XVI (procedures governing voting rights for shares in company stock); W-L Plan, Ex. 2 at § 5.1(b) ("each Participating Company shall contribute to the Company Stock Fund for each Participant in its employ"); id. at § 7.2 ("The Trustee shall establish and maintain the following Investment Funds . . . Company Stock Fund - The Company Stock Fund, except for amounts temporarily held pending investment and amounts held for disbursement, shall be wholly invested in the common stock of [the company"); id. at § 15.19 (procedures governing voting

the Plans' stated purposes include providing employees with investments in company stock.[8]
Thus, for substantially the reasons articulated in the Main ERISA Opinion, the Court finds that the
Moench presumption applies, that Defendants' company stock acquisition and retention decisions
are entitled to a presumption of prudence, and that the exercise of the fiduciaries' discretion with
respect to the acquisition and retention of Pfizer stock is subject to review only for abuse of such
discretion.

The Complaint Fails to Allege Adequately that Pfizer was Ever in a "Dire Situation"

Once the Moench presumption applies, the fiduciary's action is subject to review
for abuse of discretion. The presumption is a "substantial shield" that precludes liability "where
there is room for reasonable fiduciaries to disagree as to whether they are bound to divest from
company stock." Citigroup, 662 F.3d at 140 (internal quotations omitted). As applied by this
Circuit, the abuse of discretion inquiry looks to the overall economic situation of the company at
the time of the challenged decision -- "fiduciaries are only required to divest [a plan whose
investments are covered by the presumption] of employer stock where the fiduciaries know or
should know that the employer is in a 'dire situation.'" McGraw-Hill, 660 F.3d at 610. The
SAC's allegations that Pfizer was in a 'dire situation' are substantively identical to the allegations

---

rights for shares of company stock); PSP, Ex. 3 at § 7.2 ("All Matching Contributions shall be invested in the Pfizer Match Fund"); id. at § 18.1 (procedures governing voting rights for shares of company stock).

[8]  PSIP, Ex. 1 at § I (purpose of the Plan is to provide employees "with a proprietary interest in the continued growth and prosperity of the Company"); W-L Plan, Ex. 2 at § 1.1 (purpose of the Plan is to "provide an opportunity for employees eventually to become stockholders of [the Company] and thus strengthen their direct interest in the progress and success of the Company"); PSIP, Ex. 3 at § I (purpose of the Plan is to provide employees "with a proprietary interest in the continued growth and prosperity of Pfizer").

advanced by plaintiffs in the Main ERISA Action and, for the reasons explained in the Main ERISA Opinion, fail to allege facts sufficient to rebut the Moench presumption.  Accordingly, Plaintiffs' claims that Defendants are liable for imprudently permitting the Plans to purchase and/or retain Pfizer stock during the Prudence Class Period are dismissed.

Failure to Provide Information to Plan Participants

Plaintiffs assert that Defendants breached their fiduciary duty to inform plan participants by failing to provide complete and accurate information regarding Pfizer's serious mismanagement and improper business practices, public misrepresentations as to Celebrex and Bextra, and the general prudence of investing and holding retirement contributions in Pfizer equity.  (SAC ¶ 529.)  As an initial matter, while ERISA fiduciaries have an obligation to disclose information about plan *benefits*, they have no corresponding duty under ERISA to disclose information about plan investments or the company's financial condition to plan participants. Gearren v. McGraw-Hill Companies, Inc., 690 F. Supp. 2d 254, 271 (S.D.N.Y. 2010), aff'd, 660 F.3d 605 (2d Cir. 2011).  Here, the Plans include general language warning that investing in undiversified stock is riskier than other investment options, thereby satisfying ERISA's applicable informational requirements.  See, e.g., Slaymon, 2012 WL 6684564, at *2; (see also Ex. 16 to Pashler Decl., at pp. 3 - 4.)

Plaintiffs next assert that the Entity Defendants, Officer and Director Defendants, and Plan Committee Defendants are liable for false or misleading statements in Pfizer's SEC filings, because those filings were incorporated by reference into plan documents.  "Statements concerning a company's financial condition become subject to ERISA fiduciary duties only if they are made in an ERISA fiduciary capacity, which means that the statements are made by the plan

administrator and are intentionally connected to statements regarding a plan's benefits." McGraw-Hill, 690 F. Supp. 2d at 272; see also Citigroup, 662 F.3d at 144 ("[O]nly the plan administrator is responsible for meeting ERISA's disclosure requirements and . . . for communicating with Plan participants"). "[T]hose who prepare SEC filings do not become ERISA fiduciaries through those acts and, consequently, do not violate ERISA if the filings contain misrepresentations." In re UBS AG ERISA Litig., No. 08 Civ. 6696, 2011 WL 1344734, at *10 (S.D.N.Y. Mar. 24, 2011), vacated in part on other grounds by Taveras, 708 F.3d 436 (2d Cir. 2013). Likewise, ERISA fiduciaries who incorporate SEC documents by reference into a summary plan description do not violate ERISA unless they intentionally connect the content of those SEC filings to statements about plan benefits. Id. Here, neither the Entity Defendants nor the Officer and Director Defendants were Plan administrators responsible for communicating with Plan participants. Accordingly, they were not acting as Plan fiduciaries when making the allegedly misleading statements at issue.[9] See Citigroup, 662 F.3d at 143 - 44. The Plan Committee Defendants, who *were* fiduciaries, may be liable for false or misleading SEC statements incorporated into Plan documents, provided that they knew the statements were false or lacked a reasonable basis in fact. Gearren, 660 F.3d at 611. Plaintiffs, however, have failed to provide any specific allegations as to how the Plan Committee Defendants knew or should have known of Pfizer's misconduct or that Pfizer's SEC filings contained misstatements or omissions. See id. While the SAC contains conclusory allegations that the Pfizer Committee Defendants were high-level officers of the company who "knew or

---

[9] The three Plans at issue specifically designate certain plan committees as their named fiduciaries. See, e.g., Ex. 1, PSIP at § XIII.A (naming Savings and Investment Plan Committee); Ex. 2, W-L at § 12.1 (naming Benefits Committee and Investment Committee); Ex. 3, PSP at § 15.1 (naming Savings Plan Committee). The SAC does not allege that the Entity Defendants or Officer and Director Defendants were named fiduciaries or otherwise members of the named committees.

should have known the true state of affairs at Pfizer," it pleads no additional facts to support these allegations. (SAC ¶ 36.) Accordingly, Plaintiffs give "no basis on which to conclude that [these] fiduciaries who incorporated [SEC] filings into the [Plan] documents knew, at the time that the filings were incorporated, that the statements were false or misleading." Slaymon, 2012 WL 6684564, at *2.

Duty to Diversify Claim

Fiduciaries of an ERISA plan are required to "diversif[y] the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so." 29 U.S.C. § 1104(a)(1)(c). "Eligible individual account plans" ("EIAPs") that explicitly provide for the acquisition and holding of company stock, however, are exempt from the diversification requirement with respect to the acquisition of company stock. 29 U.S.C. §§ 1104(a)(2), 1107(b)(1), 1107(d)(3)(B). The three Plans at issue in this case qualify as EIAPs. See 29 U.S.C. § 1107(d)(3)(A) (defining an EIAP as an "individual account plan which is . . . a profit-sharing, stock bonus, thrift, or savings plan"); see also Ex. 1, PSIP at § I; Ex. 2, W-L Plan at § 1.1; Ex. 3, PSP at § I. Additionally, all the Plans provide for investment in Pfizer common stock. (See, e.g., Ex. 17, PSP at § 15.1(b) (the company "intends that the Pfizer Company Stock Fund and the Pfizer Match Fund continue to be invested . . . exclusively in shares of common stock of Pfizer without regard to . . . the diversification of assets").

Plaintiffs' contention that ERISA's diversification exemption does not apply to the relevant Plans because they were organized to meet the requirements of Puerto Rico's General Revenue Code, as opposed to the federal Internal Revenue Code, is meritless. (See SAC ¶ 476.) The law is clear that employee benefit plans organized under the laws of Puerto Rico are subject to

ERISA.  See 29 U.S.C. § 1002(10) (defining "State" to include Puerto Rico); see also In re Citigroup ERISA Litig., No. 07 Civ. 9790, 2009 WL 2762708, at *1, 7 (S.D.N.Y. Aug. 31, 2009), aff'd, 662 F.3d 128 (2d Cir. 2011) (treating Puerto Rico plan as an EIAP and stating that, "for EIAPs -- such as the Plans here -- the diversification requirement . . . is not violated by acquisition or holding of . . . qualifying employer securities").  Accordingly, Plaintiffs have failed to state a claim that Defendants breached their fiduciary duties by failing to diversify the assets in the Plans.

Derivative Claims

Plaintiffs' remaining claims -- for breach of the duty of loyalty, failure to monitor, failure to disclose to co-fiduciaries, failure to avoid conflicts of interest, and co-fiduciary liability -- are derivative of their claims that Defendants breached their fiduciary duty of prudence.  See, e.g., Citigroup, 662 F.3d at 145; see also Main ERISA Opinion at 20-21.  As Plaintiffs have failed to plead plausibly that Defendants breached any fiduciary duties, their derivative claims are also dismissed.

<u>CONCLUSION</u>

For the reasons stated above, Defendants' motion to dismiss the Second Amended Complaint is granted in full.  The Entity Defendants' separate motion to dismiss the Second Amended Complaint is terminated as moot.

This Opinion and Order resolves docket entry nos. 43 and 45.  The Clerk of Court is requested to enter judgment dismissing the complaint and to close this case.

SO ORDERED.

Dated:  New York, New York
        April 17, 2013

                                                            /S
                                        LAURA TAYLOR SWAIN
                                        United States District Judge